IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE JAMES PAULETT CHARLTON,

    Debtor-Appellant,

VERMONT EQUITY PARTNERS, LLC, and ZANGLE, INC.,

    Defendants-Appellants,

    v.

AEQUITAS SOLUTIONS, INC., real party in interest for E. LYNN SCHOENMANN, Trustee,

    Plaintiff-Appellee.
    /

No. C 11-05657 WHA
No. C 11-05747 WHA
No. C 11-05748 WHA

**ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT**

## INTRODUCTION

Appellants appeal the bankruptcy court's judgment and order on summary judgment from an adversary proceeding. For the reasons stated below, the bankruptcy court's judgment is **AFFIRMED**.

## STATEMENT

The underlying bankruptcy action involved software copyrights and a shell game — involving multiple companies controlled by two individual actors — to hide that intellectual property from creditors.

1.  **CHARLTON'S BANKRUPTCY PROCEEDING AND FRAUDULENT CONVEYANCE.**

In 2004, debtor-appellant James Charlton filed a voluntary Chapter 11 (later converted to Chapter 7) petition in this district before Bankruptcy Judge Thomas Carlson. The bankruptcy court appointed appellee E. Lynn Schoenmann as the trustee for debtor's estate.

During his bankruptcy proceedings, in a 2004 deposition, Charlton testified that he had been the "100 percent owner" of Enter Net Development Corporation and that "Enter Net actually owns the copyright and title to [the Zangle Software Information Suite] software." He also testified that he had sold Enter Net, along with the copyrights, to another company Prism Prime, LLC a year earlier *for no cash consideration* (Bank. Dkt. No. 13-1 at 28–29). In response, the trustee commenced a fraudulent conveyance action against Enter Net, Prism Prime, and Larry Anderson (then chairman of the board of Enter Net and manager of Prism Prime), among others, to recover assets transferred from Charlton, including the copyrighted software at issue in this appeal, the ZSIS software suite, which included approximately 18 educational computer programs under the trade names such as "SchoolNet" and "SchoolWorld."

In 2008, the trustee entered into a settlement agreement with Anderson and Enter Net, among others, for $2.6 million to drop her fraudulent conveyance action. As security for this amount, Anderson and Enter Net granted the trustee a security interest in certain copyrights, including intellectual property rights in the ZSIS software and any copyrighted material then owned by Enter Net and/or its subsidiaries, as well as particular software titles identified in an exhibit of that settlement agreement (Bank. Dkt. No. 13-4 at 2–3, 10, Exh. A). Although he was not a party to the settlement, Charlton received notice of the settlement agreement and did not object.

The settling parties — Anderson and Enter Net, among others — represented multiple times in the settlement agreement that they and/or their subsidiaries *owned the ZSIS software* they used as security (*id.* at 2, 17). The settling parties further represented that their interest in the copyrights was "absolute[] and no other person other than the [settling parties] has or, to [their] knowledge, claims an ownership interest in the [copyrights]" (*id.* at 26). This representation of ownership was important to the trustee because an exhibit to the settlement

2

agreement contained references to other companies, Netel Educational Systems, Inc. and SiCorp, Inc. as "copyright claimants" for the titles identified in the appended exhibit, which contained some titles that were (and still are) part of the ZSIS software suite (again, which settling parties purported to own and use as security in case of default). The trustee purportedly relied on the settling parties' statements that Netel and SiCorp were defunct subsidiary companies of the settling parties (Opp. at 4–5). Netel was identified as a subsidiary of Enter Net in the settlement agreement itself (Bank. Dkt. No. 13-4 at 1). While SiCorp was not identified as a subsidiary in the settlement agreement, Charlton later testified that SiCorp was partially owned by the settling parties (Bank. Dkt. No. 20-1 at ¶ 2). Neither Netel and SiCorp were operational at the time the settlement agreement was executed in 2008. Netel's corporate existence was suspended by the State of California in 2003, and SiCorp was purged from the corporate records of Virginia in 2006 (Bank. Dkt. Nos. 13-28, 13-29).

### 2. FORECLOSURE SALE.

The settling parties defaulted on their payments. Therefore, pursuant to the settlement, the trustee conducted a bankruptcy court-approved UCC foreclosure sale and purchased the copyright interest herself in 2011. A third-party, Gary Loyd opposed the sale arguing that he and his company, SiCorp, owned the ZSIS software that was identified the 2008 settlement agreement. That is, Charlton in his 2004 deposition, and the settling parties (including Anderson and Enter Net) in the 2008 settlement agreement, *lied* about Enter Net owning the ZSIS software. While approving the foreclosure sale of the ZSIS software, the bankruptcy court declined to determine issues of ownership or priority of competing third-party claims: "The court reserved ruling on what claims, liens, or interests are junior to the property interests [in ZSIS]" (Dkt. No. 7 at 181–84).

### 3. CHARLTON'S CHANGING STORY.

Recall that in 2004, Charlton testified that he had owned Enter Net, that Enter Net had owned the copyrights at issue, and that he had sold Enter Net and its ZSIS copyrights to Anderson's companies. Charlton's story changed in 2011 when the settling parties, including Anderson and Enter Net, defaulted under the settlement agreement with the trustee. Charlton

3

1  then claimed that Enter Net had not owned the copyrights and it was actually Netel and SiCorp,
2  which were *not* Enter Net subsidiaries (contrary to the representation in the settlement
3  agreement), that owned the copyrights.  Charlton argued (and still argues) that Netel and SiCorp
4  were not bound by the transfer restriction of the settlement agreement (Dkt. No. 13-4 at 2).  Even
5  though Charlton himself did not own Netel or SiCorp, he benefitted (and would still benefit)
6  from making this argument because also in 2011, Netel and SiCorp purportedly agreed to
7  transfer all ZSIS copyrights to newly formed companies, appellants Vermont Equity Partners,
8  LLC and Zangle, Inc., *where Charlton is now a highly placed officer*.[1]

Zangle thereafter posted on its website a press release stating that VEP had purchased ZSIS copyrights from Enter Net, and that VEP granted an exclusive worldwide license to Zangle to sell ZSIS software (Bank. Dkt. No. 13-14).  Zangle also posted on its website a letter from Enter Net (signed by Anderson as chairman of the board) confirming that Enter Net had sold ZSIS to VEP (Bank. Dkt. No. 13-15).

### 4.  THIS INSTANT ADVERSARY ACTION.

In August 2011, Trustee Schoenmann filed the adversary proceeding underlying this appeal alleging that Charlton was improperly attempting to protect valuable copyrights from the reach of his creditors.  The trustee filed the adversary proceeding against Charlton and his companies, VEP and Zangle.  Soon after filing her complaint, the trustee filed a motion for summary judgment seeking a declaration that copyright interests obtained by the trustee at the foreclosure sale pursuant to the settlement agreement were free and clear of any copyright interests of VEP and Zangle, and to enjoin VEP and Zangle from representing to the public that they owned copyright interests.  Bankruptcy Judge Carlson, who has been involved with these parties since 2004, entered a judgment granting declaratory judgment and injunctive relief.

Specifically, the bankruptcy court held (Bank. Dkt. No. 35):

> (1)  At the foreclosure sale held before this Court on August 8, 2011, the Trustee acquired all of the intellectual property to the Zangle Software Information Suite, including without limitation, all

---

[1] The validity of this transfer is in dispute before Bankruptcy Judge Richard Neiter in the Central District of California in the matter of Zangle's own bankruptcy.

4

> copyrights thereto, free and clear of any interest in such property which may have been held by defendants Vermont Equity Partners LLC and Zangle, Inc.; and
>
> (2) Defendants Vermont Equity Partners LLC and Zangle, Inc. own no interest in the Zangle Software Information Suite, or any part or aspect thereof, including without limitation, the copyrights thereto.

As will be discussed, a key dispute between the parties is whether the bankruptcy court's judgment affects potential third-party rights to the ZSIS intellectual property or only affects the parties in the action — VEP and Zangle. The bankruptcy court also enjoined VEP, Zangle, and Charlton from "informing or representing to anyone, including without limitation, any past, present or future customers of the Zangle Software Information Suite that they hold or own any interest in the Zangle Software Information Suite or the copyrights thereto" (Bank. Dkt. No. 35).

Bankruptcy Judge Carlson reasoned that Charlton, VEP, and Zangle were judicially estopped from contending that Enter Net did not own and use the ZSIS copyrights as security in the settlement agreement with the trustee (Bank. Dkt. No. 24):

> There is no dispute that Charlton stated under oath in the bankruptcy case that Enter Net owned the intellectual property in question. Defendants' argument is that Enter Net did not in fact own the IP in question and that the Settlement Agreement released all claims against the entity that did own the IP. Charlton is judicially estopped from contesting his prior statement that Enter Net owned the IP. This is so because Defendants' very argument establishes the prejudice that would result from permitting Charlton to change his story. Charlton cannot do indirectly, through corporations in which he is a highly placed officer involved in the purported acquisition of the IP, what he cannot do directly, and Vermont Equity Partners and Zangle must be similarly estopped from challenging Charlton's statement that Enter Net owned the IP. There is no dispute that Trustee foreclosed upon a security agreement on the IP owned by Enter Net. Thus, as between Trustee, Charlton and any party claiming an interest in a transaction in which Charlton was involved, Trustee is the owner of the IP.

That is, Charlton, VEP, and Zangle were estopped because (1) Charlton testified in 2004 that the ZSIS copyrights were sold to Enter Net and (2) Enter Net represented in the settlement

5

agreement with the trustee that it owned the ZSIS copyrights. Therefore, Charlton was estopped from arguing that, contrary to his 2004 testimony, the ZSIS copyrights were not actually sold to Enter Net and that his new companies, VEP and Zangle, acquired the copyrights free and clear of the trustee's interest.

*          *          *

Appellants Charlton, VEP, and Zangle request that this Court reverse the judgment and make findings that Netel and SiCorp were the owners of ZSIS and that the ZSIS copyrights were not subject to the trustee's foreclosure sale.[2]

## ANALYSIS

### 1. STANDARD OF REVIEW.

In deciding an appeal from a bankruptcy court, a district court reviews questions of fact for clear error while conclusions of law are reviewed de novo. A bankruptcy court's findings of fact are accepted unless the reviewing court has a "definite and firm conviction that a mistake has been committed. Mixed questions of law and fact are reviewed de novo." *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010) (internal citations omitted).

### 2. SCOPE OF THE BANKRUPTY COURT'S ORDERS.

As an initial matter, this order must interpret the scope of the bankruptcy court's judgment. Appellant argues that the judgment is improperly broad because it suggests that the trustee acquired *all* intellectual property rights to ZSIS, and was not limited to the intellectual property rights of VEP and Zangle. This order disagrees. The bankruptcy court's judgment stated that "the Trustee acquired all of the intellectual property to the Zangle Software Information Suite, including without limitation, all copyrights thereto, *free and clear of any interest in such property which may have been held by defendants Vermont Equity Partners LLC and Zangle, Inc.*" (Bank. Dkt. No. 35) (emphasis added). This highlighted clause from the bankruptcy court's judgment limits its judgment to VEP's and Zangle's intellectual property rights.

---

[2] While this action was on appeal before this Court, appellee Aequitas Solutions, Inc. purchased the trustee's interests in the copyrights and substituted itself as the real party in interest for the trustee in this appeal.

1    This reading of the bankruptcy court's judgment is supported by the underlying record of

2 the bankruptcy proceeding.  At the motion hearing on summary judgment, the bankruptcy court

3 made clear that its scope of relief would not impact the alleged interests of third parties such as

4 SiCorp and Netel (Bank. Dkt. No. 71 at 10–12):

| | |
|---|---|
| Bankruptcy Court: | Okay. So it's all rights to the extent they derive from Mr. Charlton, then the shares of other companies he — these other companies he owned, directly or as subsidiaries of those other companies, that's — that's all you're concerned with: the Charlton-derived interest, not the Loyd-derived interest [including SiCorp and Netel], or some other interest, — |
| Trustee: | That — that's correct. We don't — |
| Bankruptcy Court: | — derived apart from Mr. Charlton, from — |
| Trustee: | — purport to foreclose. |

This was agreed to by all parties, including appellants (*id.* at 27–30).  Moreover, the trustee's motion for summary judgment itself, which the bankruptcy court granted, *did not seek a determination of third-party rights*: "[t]he instant adversary proceeding does not seek a determination of the [the alleged rights of SiCorp or Gary Loyd]. . . . . [Their interests] are alleged to be senior in priority to the Trustee's interests in the Copyrights, and if valid, would not have been foreclosed by the sale" (Bank. Dkt. No. 12 at 3 n.1).  Appellant VEP admits this (Br. 19–20).  Therefore, the bankruptcy court's judgment must be read to mean that the trustee acquired all intellectual property rights that may have been held by VEP or Zangle.  The judgment does not extend to intellectual property rights of third-parties.

### 3. THIS COURT WILL NOT MAKE FACTUAL FINDINGS NOT BEFORE THE BANKRUPTCY COURT IN THE FIRST INSTANCE.

A court sitting on appeal has discretion to consider an issue raised for the first time on appeal only "(1) in the exceptional case where review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when the issue arises while on appeal because of a change in the law, or (3) when the issue is purely one of law and either does

7

not depend on the factual record developed below, or the pertinent record has been fully developed." *WildWest Institute v. Bull*, 547 F.3d 1162, 1172 (9th Cir. 2008).

As discussed, the bankruptcy court did not make any findings regarding the intellectual property rights of third-parties to the ZSIS software. Appellants request this Court, sitting on appeal, find that third-parties, SiCorp and/or Netel, are the true owners of ZSIS. This request is rejected. These theories have been raised for the first time on appeal. Bankruptcy Judge Carlson, who has dealt with this action since 2004, did not make any factual finding regarding SiCorp's and Netel's ownership of the copyrights at issue. Indeed, he expressly reserved on deciding those issues. This order will not make such factual findings in the first instance with an incomplete record.

**4.    BASIS FOR THE BANKRUPTCY COURT'S JUDGMENT: JUDICIAL ESTOPPEL.**

Judicial estoppel is an equitable doctrine invoked by a court at its discretion to protect the dignity of the judicial process by binding a party to his own prior testimony and precluding him from gaining an advantage by taking one position and then taking an inconsistent position in order to gain some other advantage. *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). The parties agree that the bankruptcy court's application of judicial estoppel is reviewed for an abuse of discretion. *See also Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001).

> The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle. Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not

8

> estopped. In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

*New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (citations omitted); *see also Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007).

Bankruptcy Judge Carlson, who has dealt with Charlton and these copyright interests for approximately eight years, did not abuse his discretion by holding that Charlton, Zangle (where Charlton serves as chief technological officer and chairman of the board), and VEP (where Charlton acted as its "authorized agent" for these copyrights) were estopped from arguing that Enter Net did not own ZSIS at the time of the settlement agreement. It is undisputed that Charlton testified in 2004 that his company, Enter Net, owned ZSIS. This testimony was relied on by the trustee in entering the settlement agreement and dropping her fraudulent conveyance action. Because of the prior reliance, the bankruptcy court held that Charlton's could not change his story seven years later to prevent creditors from reaching his copyright interests (Bank. Dkt. No. 71 at 26):

> Bankruptcy Court:   [Y]ou've represented that the subsidiary didn't own it. You can't use that to challenge that because you said the parent owned it. And you cannot come back now and say something different.
>
> Charlton:   I learned that that was a mistaken belief. I did.
>
> Bankruptcy Court:   It doesn't matter.

The bankrupty court held that Zangle and VEP also must be estopped by Charlton's prior actions because Charlton was inappropriately trying to hide his copyright interests "indirectly, through corporations in which he is a highly placed officer involved in the purported acquisition of the IP, what he cannot do directly" (Bank. Dkt. No. 24 at 2; *see also* Bank. Dkt. No. 13-20 at 3 (stating that Charlton is the sole director of Zangle)). The bankruptcy court also found that Charlton acted on behalf of Zangle and VEP as their agent regarding the copyrights in contracts and at judicial proceedings (Bank. Dkt. No. 71 at 9, 13–17):

9

> The gist of this ruling was — the logic of is limited to the following: That Mr. Charlton, by having said that this property was owned by [Enter Net], as opposed to any of the other — any other of his entities, that he and any other party for whom he is acting as agent, in — in dealing with these rights, that the trustee's interest is better than theirs because of the estoppel.

Appellants do not challenge the bankruptcy court's factual finding that Charlton was a highly placed officer in VEP and Zangle, and that he was the companies' authorized agent with respect to the copyrights at issue. This order finds that the bankruptcy court did not abuse its discretion by estopping VEP and Zangle from arguing that Enter Net did not own the copyrights at the time of the settlement agreement with the trustee. Therefore, the bankruptcy court also did not abuse its discretion in holding that VEP and Zangle had no ownership interest in the ZSIS software after the trustee's foreclosure sale.

### 5. PERMANENT INJUNCTION.

To qualify for a permanent injunction, the plaintiff must prove: (1) the elements of a cause of action involving the wrongful act sought to be enjoined; and (2) the grounds for equitable relief, such as inadequacy of the remedy at law. The trial court's decision to grant a permanent injunction is reviewed for abuse of discretion, but underlying conclusions of law are reviewed de novo and findings of fact are reviewed for clear error. *Perry v. Brown*, 671 F.3d 1052, 1075 (9th Cir. 2012).

As discussed, the bankruptcy court did not abuse its discretion in finding that VEP and Zangle had no ownership interest in the ZSIS software. The bankruptcy court then properly found that enjoining VEP and Zangle from asserting ownership in the public market was necessary to prevent harmful market confusion. The record demonstrated that appellants were making false statements claiming undisputed ownership of the ZSIS copyrights and completion of outstanding litigation proceedings to the public and ZSIS users (Bank. Dkt. No. 13-25; 13-26). The record also demonstrated that there existed confusion in the marketplace as to the rightful owner of these copyrights. Users of ZSIS were concerned that they would be liable for copyright infringement because VEP and Zangle were asserting copyright ownership. Even appellants have admitted that there was confusion in the marketplace as to copyright ownership (Bank. Dkt.

10

No. 13-26 at 3–4). The bankruptcy court's decision to enjoin VEP and Zangle from creating more market confusion was not an abuse of discretion.

Appellants argue that the trustee did not show the requisite harm because she could not clearly establish her interest in the ZSIS intellectual property. This order disagrees. The bankruptcy court correctly determined that the trustee received all ownership interests that might have been held by VEP and Zangle, reserving on ownership interests of third-parties. The bankruptcy court determined that false statements regarding ownership were harmful because those statements caused market confusion about the trustee's ownership in relation to VEP's and Zangle's ownership. This finding was not clearly erroneous.

## CONCLUSION

For the reasons stated, the judgment of the bankruptcy court is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: July 2, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11